Todd C. Theodora, Esq. (State Bar No. 120426)
TTheodora@tocounsel.com
Andrew B. Breidenbach, Esq. (State Bar No. 281586)
abreidenbach@tocounsel.com
THEODORA ORINGHER PC
535 Anton Blvd., Suite 900
Costa Mesa, CA 92626
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Ronald Valenzuela (State Bar No. 210025)
Ron.Valenzuela@lathropgpm.com
LATHROP GPM LLP
2049 Century Park East, Suite 3500S
Los Angeles, CA 90067
Telephone: 310.789.4600
Facsimile: 310.789.4601

Brent W. Vincent (*pro hac vice* pending)
brent.vincent@lathropgpm.com
155 North Wacker Drive, Suite 3800
Chicago, IL 60606-1787
Telephone: 312.920.3300
Facsimile: 312.920.3301

Attorneys for Defendant/Counterclaim-Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Evanston Insurance Company, an Illinois Corporation,<br><br>Plaintiff & Counterclaim Defendant,<br><br>v.<br><br>The Roman Catholic Bishop of Orange, a California Corporation Sole,<br><br>Defendant & Counterclaim Plaintiff. | Case No. 8:23-cv-02446 MRA (ADSx)<br><br>**DEFENDANT/COUNTERCLAIM-PLAINTIFF'S OPPOSITION TO EVANSTON'S MOTION TO DISMISS FIRST COUNTERCLAIM**<br><br>Hearing Date: August 1, 2024<br>Hearing Time: 1:30 p.m.<br>Judge: Hon. Mónica Ramírez Almadani<br>Courtroom: 10B |

## TABLE OF CONTENTS

**Page**


I. Legal Standard ........ 9

II. Rules of Policy Interpretation ........ 10

III. Count I of the Counterclaim States A Claim Upon Which Relief May Be Granted ........ 11

A. Dismissal of a Declaratory Judgment Action is Only Proper if Declaratory Relief is Not Properly Before the Court ........ 11

B. The Aggregate Provision is Ambiguous and Must Be Construed According to the RCBO's Reasonable Expectations ........ 13

1. The Aggregate Limits Provision is Ambiguous ........ 13

2. The Cases Relied Upon by Evanston are Neither Precedential Nor Analogous ........ 16

IV. Conclusion ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bank of the W. v. Superior Ct.*,
2 Cal.4th 1254 (1992) .......... 10

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
5 Cal.4th 854 (1993) .......... 2, 3, 10, 11

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) .......... 9

*Fibreboard Corp. v. Hartford Accident & Indem. Co.*,
16 Cal.App.4th 492 (1993) .......... 10

*Fire Ins. Exch. v. Sup. Ct.*,
116 Cal.App.4th 446 (2004) .......... 10, 16

*Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.*,
189 Cal.App.4th 101 (2010) .......... 3

*Garamendi v. Mission Ins. Co.*,
131 Cal.App.4th 30 (2005) .......... 2, 3, 10, 13, 14, 15, 18

*Hercules, Inc. v. AIU Ins. Co.*,
784 A.2d 481 (Del. 2001) .......... 16

*Lakeland Village Homeowners Ass'n v. Great Am. Ins Grp.*,
727 F. Supp. 2d 887 (E.D. Cal. 2010) .......... 11

*Lockheed Martin Corp. v. Continental Ins. Co.*,
134 Cal.App.4th 187 (2005) .......... 2, 11

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......... 11, 12

*Moyo v. Gomez*,
32 F.3d 1382 (9th Cir. 1994) .......... 9

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 9

*Ray v. Valley Forge Ins. Co.*,
77 Cal.App.4th 1039 (1999) .......... 10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) .......... 1

*Rhoades v. Avon Prods., Inc.*,
504 F.3d 1151 (9th Cir. 2007) .......... 2, 12

*San Bernardino Cty. V. Ins. Co. of Pa.*,
No. CV 21-01978 PSG(JEMx), 2023 WL 4291835 (C.D. Cal. May 16, 2023) .......... 4, 17, 18

*San Diego Unified Port. Dist.*,
809 Fed. App'x 407 (9th Cir. 2020) .......... 4, 17, 18

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) .......... 12

*Security Ins. Co. of Hartford v. The Lubrizol Corporation*,
No. 1:06-cv-215, 2008 WL 11344758 .......... 15, 16

*Waller v. Truck Ins. Exch., Inc.*,
11 Cal.4th 1 (1995) .......... 10

*Weyerhaeuser Co. v. Commercial Union Ins. Co.*,
15 P.3d 115 (Wash. 2000) .......... 16

*Wi2Wi, Inc. v. Twin City Fire Ins. Co.*,
No. 19-cv-06995-BLF, 2020 WL 4913489 (N.D. Cal. May 5, 2020) .......... 12

**STATUTES**

28 U.S.C. § 2201(a) .......... 11

**RULES**

Fed. R. Civ. P. 8 .......... 9

## SUMMARY OF OPPOSITION

At issue in this insurance coverage dispute between The Roman Catholic Bishop of Orange (the "RCBO") and one of its second-layer excess insurance carriers, Evanston Insurance Company, as alleged successor-in-interest to Associated International Insurance Company (collectively, "Evanston"), is the extent of Evanston's obligation to indemnify the RCBO for hundreds of pending lawsuits seeking damages for alleged acts of sexual molestation that purportedly occurred under the RCBO's supervision. (Doc. 1 at 1:23 – 2:8). These lawsuits seek hundreds of millions of dollars in damages and threaten the RCBO's ability to fulfill its spiritual, educational and humanitarian mission, as well as its very existence.[1]

Count I of the RCBO's Counterclaim is brought under the Declaratory Judgment Act and seeks a declaration that Associated Policy No. AEL 050384 (the "Associated Policy") does not contain an annual aggregate limit for sexual molestation claims. (Doc. 19 at 20:17 – 21:21). Count I is a mirror image of Evanston's claim for declaratory relief under that same Act, which asserts that there is "*an actual and present controversy*" and seeks "a judicial declaration that its $4,000,000 annual aggregate limit of liability … applies to all past and present sexual molestation claims made against RCBO." (Doc. 1 at 6:20-25; 7:6-8).

Despite its identical request for declaratory relief, Evanston moves for Rule 12(b)(6) dismissal of Count I arguing that the RCBO is "not entitled to the requested declaratory relief[.]" (Evanston Mem. in Supp. of Mtn. to Dismiss ("Evanston's Mem.") p. 13). This is not a proper basis for dismissal of a declaratory judgment action. Rather, a proper motion to dismiss a claim for declaratory judgment challenges

[1] *See generally* Judicial Council Coordination Proceeding No. JCCP 5101 (Los Angeles County Superior Court). On a motion to dismiss, a court may take judicial notice of the existence, content, and authenticity of court records and other public filings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

whether a case for declaratory judgment is presented by the allegations of the pleading. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1160 (9th Cir. 2007). It is not directed at whether the party seeking judgment is entitled to a declaration in its favor. *Id.* If there is a justiciable controversy, the motion to dismiss should be denied. *Id.* Here, Evanston concedes that a judicial declaration of whether the Associated Policy provides an aggregate limit for general liability claims is ripe for disposition. (Doc. 1 at 6:20-25). A claim for declaratory judgment is thus properly before the Court.

Evanston further fails to establish a right to dismissal of Count I at the pleading stage. Evanston argues that dismissal is proper because the aggregate limit of liability provision was previously judicially construed to provide an annual aggregate limit for general liability claims, such as the claims against the RCBO. (Evanston's Mem. pp. 13-18). However, for a policy provision, even one previously judicially construed, to be fixed as a matter of law, that provision must be unambiguous and must have been construed in an analogous context. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 867-88 (1993). Evanston establishes neither here.

First, the only precedential California decision on this issue, *Garamendi v. Mission Ins. Co.*, 131 Cal.App.4th 30, 47 (2005), held that the same provision was "*not just ambiguous, but nearly incoherent.*" (emphasis added) The next step under California law, as set forth by the Court in *Garamendi*, is to review the circumstances surrounding the coverage dispute, and analyze the provision to "protect the objectively reasonable expectations of the insured." *Id.* at 42 (citation omitted). This is a fact intensive determination that cannot be decided at the pleading stage.

Second, to be fixed in law the policy provision at issue *must be used in a context analogous to the context in which it was judicially construed. Lockheed Martin Corp. v. Continental Ins. Co.*, 134 Cal.App.4th 187, 197-98 (2005). Here, the RCBO has already produced some evidence suggesting that the factual circumstances in the

present dispute are not analogous to those in *Garamendi*,[2] provides more evidence in its proposed First Amended Counterclaim[3] and will seek more such evidence in fact discovery.[4] Evanston has provided no evidence of context in support of its Motion. Dismissal is likewise premature on this basis.

Evanston may assert that the *Garamendi* Court ultimately held that there was an aggregate limit for general liability claims. This determination is not binding or persuasive here. Based on the particular facts and circumstances of that case, the *Garamendi* Court construed the provision in a manner beneficial to the policyholder – in that case the policyholder benefitted from the finding of an aggregate limit for property damage claims. *Garamendi*, 131 Cal.App.4th at 47-49. The interpretation of this ambiguous provision is not fixed in law. Instead, California law requires that the aggregate provision be evaluated in the context of *this* policy and under the factual circumstances of *this* case. *Lawyers' Mut. Ins. Co.*, 5 Cal.4th at 867. This necessarily involves the taking of discovery and introduction of evidence to determine the parties' intent and reasonable expectations in drafting the provision. *Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.*, 189 Cal.App.4th 101, 110-11 (2010).

---

[2] This evidence includes the underlying Aetna Excess Policy (defined herein), which does not contain a general aggregate limit for the claims against the RCBO.

[3] The RCBO has filed a Motion for Leave to file a First Amended Counterclaim ("FAC"). (Doc. 34). The proposed FAC adds factual allegations and attaches supporting evidence detailing that the RCBO's other contemporaneous primary and excess layer insurance policies do not have aggregate limits and that aggregate limits were generally not included by insurers in policies like the Associated Policy prior to 1986. (Doc. 34-2 at 3:1-10:28). The RCBO requests that the Court consider these allegations in the FAC in deciding Evanston's Motion, although there are sufficient grounds to deny the Motion set forth herein.

[4] The RCBO will seek discovery from Evanston, third parties (including its other insurers), and expert testimony establishing that policies issued at the time of the Associated Policy did not contain general aggregate limits and that the RCBO's could not have reasonably expected that the Associated Policy, but none of its other policies contained general aggregate limits.

Evanston's reliance upon *San Diego Unified Port. Dist.*, 809 Fed. App'x 407 (9th Cir. 2020) and *San Bernardino Cty. V. Ins. Co. of Pa.*, No. CV 21-01978 PSG(JEMx), 2023 WL 4291835 (C.D. Cal. May 16, 2023) is likewise misplaced. These non-precedential unpublished federal court decisions are not binding interpretations of California law. To the extent they assert that the *Garamendi* Court found this aggregate provision unambiguous or that post-*Garamendi,* the aggregate limits provision must be read to provide an aggregate limit for general liability claims in all circumstances, they misapply the California Appellate Court's holding and California law. These cases are limited to their individual circumstances and do not, as Evanston suggests, fix an iron-clad interpretation of the aggregate limits provision.

Given the finding that the aggregate limits provision was ambiguous and the distinct factual circumstances between the present case and *Garamendi* (and its non-precedential federal court progeny), Evanston has not and cannot establish that the aggregate limits provision unambiguously provides an aggregate limit for general liability claims as a matter of law. Accordingly, dismissal is improper at this stage and the construction of this provision is only proper with a full factual record.

## **STATEMENT OF FACTS THE ASSOCIATED POLICY**

Evanston issued excess/umbrella liability Policy No. AEL 050384 to the RCBO with an initial policy period of June 18, 1977 through June 18, 1978. (Doc. at 7:18-28; 16:27 – 17:2; Doc. 19-1). The policy period was extended three times for 12-month periods, namely, (a) June 18, 1978 to June 18, 1979, (b) June 18, 1979 to June 18, 1980, and (c) June 18, 1980 to June 18, 1981. (Doc. 19 at 7:18-28; 17:3-6; Doc. 19-1 at 2, 15, 18, 20).

The Associated Policy indemnifies the "Assured [the RCBO] for all sums which the Assured shall be obligated to pay … for damages, direct or consequential and expenses on account of: (i) Personal Injuries, including death at any time resulting therefrom; …, caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying

Umbrella Policies stated in Item 2 of the Declarations and issued by [Aetna]…." (Doc. 19 at 17:16-26; Doc. 19-1 at 3). The "Underlying Umbrella Policies" identified in the Associated Policy is the first-layer excess general liability insurance policy issued to the RCBO by the Aetna Casualty and Surety Company ("Aetna") for the period June 18, 1976, to June 18, 1977. (Doc. 19 at 17:7-11; Doc. 19-1 at 2). Aetna further issued first-layer excess general liability on an annual basis providing coverage through June 18, 1981 that also are underlying the Associated Policy (collectively, the "Aetna Excess Policies"). (Doc. 19 at 17:7-9; Doc. 19-1 at 3). The Associated Policy follows form to the identified Aetna Excess Policy, which provides $1,000,000 per occurrence limits of liability. (Doc. 19 at 17:7-15; Doc. 19-1 at 3; Doc. 19-2). None of the Aetna Excess Policies have a general annual aggregate limit of liability applicable to sexual molestation claims. (Doc. 19 at 17:12-13; Doc. 19-2 at 7).

The Associated Policy provides an annual $4,000,000 per occurrence limit of liability. (Doc. 19 at 17:14-15; Doc. 19-1 at 3). The Associated Policy attaches only after the "underlying insurers … have paid or have been held liable to pay" $1,000,000 per occurrence, "but $1,000,000 in the aggregate for each annual period … during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured." (Doc. 19 at 18:28 – 19:6; Doc. 19-1 at 3). Once coverage is triggered, the Underwriters of the Associated Policy are liable to "pay only the excess thereof up to a further [$4,000,000] Ultimate Net Loss in respect of each occurrence – *subject to a limit of [$4,000,000] in the aggregate for each annual period during the currency of [the Associated Excess] Policy, separately in respect of Products Liability and separately in respect of Personal injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured."* (Doc. 19 at 19:7-14; Doc. 19-1 at 3) (emphasis added).

**<u>THE SOUTHERN CALIFORNIA CLERGY CASES</u>**

The present dispute involves claims for coverage under the Associated Policy

and other policies of insurance issued to the RCBO for claims asserted against it in the Judicial Council Coordination Proceeding in Los Angeles County Superior Court bearing Case No. JCCP 5101 ("Southern California Clergy Cases"), which currently includes over 200 active cases in which plaintiffs seek relief against the RCBO for alleged molestation committed when they were minors. As exemplified by the settlement in the John OC-5 Doe case, which exceeded the Associated Policy limits, the Southern California Clergy Cases pose a significant threat to the RCBO. (Doc. 19 at 19:16 – 20:16).

## THE ASSOCIATED COMPLAINT

Evanston filed its Complaint in this action on December 22, 2023, asserting as its First Claim for Relief a claim for declaratory relief that the Associated Policy contains an annual $4,000,000 aggregate limit for general liability claims, including the Southern California Clergy Cases. (*See generally* Doc. 1). The First Claim for Relief contains the following allegations:

> 26. An actual and present controversy has arisen and now exists between EVANSTON, on the one hand and RCBO on the other, concerning their respective rights and obligations with respect to whether the past and present sexual molestation claims that have been asserted against RCBO are subject to the $4,000,0000 annual aggregate limit of liability under the ASSOCIATED Policy or whether each sexual molestation claim is subject to a $4,000,000 per occurrence limit of liability.
>
> …
>
> 29. EVANSTON seeks a judicial declaration that its $4,000,000 annual aggregate limit of liability under the ASSOCIATED Policy applies to all past and present sexual molestation claims made against RCBO.
>
> …
>
> 31. EVANSTON has no adequate remedy at law so a judicial declaration is necessary and appropriate at this time.

(*Id.* at 6:18-25; 7:6-8; 7:13-14).

**RCBO's COUNTERCLAIM AND PROPOSED AMENDED COUNTERCLAIM**

On March 7, 2024, the RCBO filed its Answer, Affirmative Defenses and Counterclaim to Evanston's Complaint for Declaratory Judgment and Reimbursement. (*See generally* Doc. 19). The RCBO's first Counterclaim seeks a judicial declaration that the Associated Policy does not contain annual aggregate limits applicable to general liability claims, including the Southern California Clergy Cases. (*Id.* at 20:17-21:21). Counterclaim I alleges, in pertinent part:

> 32. An actual controversy exists between Evanston, on the one hand, and the RCBO, on the other hand, regarding Evanston's indemnification obligations to the RCBO under the Associated Excess Policy and whether there is an annual aggregate under the Associated Excess Policy for molestation claims.
>
> 33. The RCBO accordingly seeks a judicial declaration that there is no annual aggregate under the Associated Excess Policy applicable to molestation claims, and that the annual limit of liability under the Associated Excess Policy is $4,000,000 per occurrence, with no aggregate.

(*Id.* at 21:4-11).

The Counterclaim also alleges that the Aetna Excess Policies do not contain an aggregate limit for general liability claims. (Doc. 19 at 17:7-13; 18:14-27). The June 18, 1976 to June 18, 1977 Aetna Excess Policy is currently attached as an exhibit to the Counterclaim, with the June 18, 1977 to June 18, 1978 Aetna Excess Policy attached as an exhibit to Evanston's Complaint. (Doc. 19-2; Doc. 1-2).

On July 10, 2024, the RCBO sought leave of this Court to file a First Amended Counterclaim ("FAC"). (*See generally* Doc. 34 and Exhibits thereto). The proposed FAC adds new factual allegations relating to the RCBO's insurance coverage in the timeframe in which the RCBO was insured by the Associated Policy. Specifically, the proposed FAC details that:

- From June 18, 1976, to June 21, 1981, the RCBO was insured by primary layer general liability insurance policies issued by Aetna with per occurrence limits of $500,000, but no general aggregate limits applicable to sexual molestation claims (the "Aetna Primary Policies");
- From June 18, 1976, to June 18, 1981, the RCBO was insured by the Aetna Excess Policies with per occurrence limits of $1,000,000, excess the $500,000 Aetna Primary Policies, but no general aggregate limits applicable to sexual molestation claims;
- From June 18, 1976, to June 18, 1977, the period immediately prior to the Associated Policy, the RCBO was insured by an excess umbrella insurance policy issued by Stonewall Insurance Company ("Stonewall") with per occurrence limits of $4,000,000, excess of the $1,000,000 Aetna Excess Policies and the $500,000 Aetna Primary Policies, but no general aggregate limits applicable to sexual molestation claims;
- From July 1, 1981, to July 1, 1984, the RCBO was insured by a primary layer general liability insurance policy issued by Centennial Insurance Company ("Centennial") with annual $500,000 per occurrence limits of liability, but no general aggregate limits applicable to sexual molestation claims;
- From July 1, 1981, to July 1, 1984, the RCBO was insured by excess layer commercial umbrella insurance policies issued by Industrial Underwriters Insurance Company ("Industrial") with annual $10,000,000 (1981-1982) and $20,000,000 (1982-1984) per occurrence limits of liability, excess of the $500,000 Centennial Policy, but no general aggregate limits applicable to sexual molestation claims; and
- From June 18, 1979, to June 18, 1981, the RCBO was insured by excess layer insurance policies issued by Allianz Underwriters, Inc., and Continental Casualty Company, that provided per occurrence limits

> above the Associated Policy and are asserted to follow form to the Associated Policy, such that these policies have aggregate general limits if the Associated Policy contains aggregate general limits and do not have aggregate general limits if the Associated Policy does not.

(Doc. 34-2 at 3:3 – 10:27).

The proposed FAC also attached the November 1986 United States General Accounting Office (the "GAO") Report Entitled "Liability Insurance: Changes in Policies Set Limits on Risks to Insurers" (the "GAO Report"), which explains that policies issued prior to 1986 "applied aggregate limits of liability only to risks involving bodily injury and property damage arising from products and completed operations. It did not place aggregate limits on the other risks…." (*Id.* at 13:11-14:2). The FAC also references Restatement of the Law of Liability Insurance § 37, which provides in Comment B that "for much of the 20th century it was common for commercial general liability policies to have an aggregate limit for products liability claims but not for other kinds of claims." (*Id.* at 13:26 – 14:2).

## <u>ARGUMENT</u>

### I. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. In evaluating 12(b)(6) motions, a court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the non-moving party can prove no set of facts in support of its claim which would entitle it to relief. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

## II. RULES OF POLICY INTERPRETATION

The principles of insurance policy interpretation are well-settled under California law. Courts "look first to the language of the [policy] in order to ascertain its plain meaning." *Garamendi*, 131 Cal.App.4th at 42 (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995)). The plain meaning of policy language is "the meaning a layperson would ordinarily attach to it." *Id.* (citing Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2004) ¶ 4:14, p. 4–5 (emphasis omitted) ("The test is not what the insurer or its attorneys intended the policy to mean but what a reasonable person in the position of the insured would have understood the words to mean."). Each term must be interpreted in context and with regard to its intended function and the structure of the policy as a whole. *Garamendi*, 131 Cal.App.4th at 42. "One of the circumstances that may properly be considered [in construing a policy] is the existence and coverage limits of other insurance held by the insured." *Id*. (citing *Fibreboard Corp. v. Hartford Accident & Indem. Co*. 16 Cal.App.4th 492, 509 (1993) (because insured had separate product liability insurance, provision in a policy applying to claims "arising out of premises or operations" was construed as covering different risks)). Courts may consider "interpretative literature" in construing standardized insurance policy provisions. *Ray v. Valley Forge Ins. Co*., 77 Cal.App.4th 1039, 1040 (1999).

When a provision is "capable of two or more constructions, both of which are reasonable," it will be deemed ambiguous. *Lawyers' Mut. Ins. Co*., 5 Cal.4th at 867. The existence of conflicting judicial interpretations of a policy provision support a finding that a policy provision is ambiguous. *Fire Ins. Exch. v. Sup. Ct.*, 116 Cal.App.4th 446, 465 (2004).

Policy language must be interpreted in the context of the policy as a whole and in the circumstances of the case, even if it has been previously judicially construed. *See Bank of the W. v. Superior Ct.*, 2 Cal.4th 1254, 1265 (1992) ("The fundamental goal of contractual interpretation is to give effect to the mutual intention of the

parties"); *Lakeland Village Homeowners Ass'n v. Great Am. Ins Grp.*, 727 F. Supp. 2d 887, 891 (E.D. Cal. 2010) (citing *Lockheed Martin Corp.*, 134 Cal.App.4th at 197) (Before a policy provision is assigned a prior judicial construction, "the policy provision at issue must be used in a context analogous to the context in which it was judicially construed."). As stated by the California Supreme Court, "[T]he proper question is whether the word is ambiguous in the context of *this* policy and the circumstances of *this* case." *Lawyers' Mut. Ins. Co.*, 5 Cal.4th at 868 (emphasis in the original). Because the "provision will shift between clarity and ambiguity with changes in the event at hand," any interpretation of policy language is necessarily case and fact specific. *Id*

Once it is determined that a provision has no clear and unambiguous meaning, ambiguous coverage clauses are to be interpreted to "protect the objectively reasonable expectations of the insured." *Garamendi*, 131 Cal.Rptr.4th at 404. "The next rule, which is applied only if neither of the above rules resolves the problem, is to interpret the ambiguous provision against the insurer." *Id*. Finally, provisions that limit coverage must be conspicuous, plain and clear to be enforceable. *Id.*

## III. COUNT I OF THE COUNTERCLAIM STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. DISMISSAL OF A DECLARATORY JUDGMENT ACTION AS ONLY PROPER IF DECLARATORY RELIEF IS NOT PROPERLY BEFORE THE COURT

The Declaratory Judgment Act provides a mechanism for parties to define their rights, duties or obligations regarding a controversy not yet ripe for adjudication. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). The Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). An "actual controversy" has the same meaning as under the Article III case-or-controversy requirement. *Id.* The only requirement to bringing

a claim under the Declaratory Judgment Act is that the facts alleged, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127. The controversy must be "definite and concrete" such that the dispute is "real and substantial" as opposed to an advisory opinion upon a hypothetical set of facts. *Id.*

Thus, in deciding a motion to dismiss a claim for declaratory relief, "the only question is whether, on the basis of the allegations, a proper case is presented for invoking the jurisdiction of the court to make a declaratory judgment and not whether the plaintiff is entitled to a favorable declaration." *Wi2Wi, Inc. v. Twin City Fire Ins. Co.*, No. 19-cv-06995-BLF, 2020 WL 4913489, at *6 (N.D. Cal. May 5, 2020); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Rhoades*, 504 F.3d at 1160 ("the question presented is whether [the pleading] is, on its face, sufficient to survive a motion to dismiss, not whether the alleged facts will ultimately prove accurate.")

The RCBO easily meets this standard. Evanston admits there is "an actual and present controversy" between the RCBO and Evanston "with respect to whether the past and present sexual molestation claims that have been asserted against RCBO are subject to the $4,000,000 annual aggregate limit of liability under the ASSOCIATED POLICY[.]" (Doc. 1 at 6:20-25). This is the exact same relief sought by the RCBO. (Doc. 19 at 20:17-21:21). Based on Evanston's own pleading, there is a present justiciable controversy as to the interpretation of the aggregate provisions of the Associated Policy which will have very real implications on Evanston's indemnity obligations with respect to the hundreds of lawsuits pending against the RCBO.

Nothing more is required for this Court to hear this dispute. The fact that Evanston thinks its interpretation is correct does not mean that the RCBO has failed to state a claim upon which relief may be granted. As such, Evanston's Motion should be denied.

## B. THE AGGREGATE PROVISION IS AMBIGUOUS AND MUST BE CONSTRUED ACCORDING TO THE RCBO'S REASONABLE EXPECTATIONS

Evanston argues that the aggregate limit provision must be found unambiguous as a matter of law and interpreted to include an annual aggregate limit of liability of $4,000,000 for general liability claims, such as the claims asserted against the RCBO, because the same language of the aggregate limit provision in the Associated Policy has been previously judicially construed. This argument ignores the pronouncement in *Garamendi* that the aggregate limit provision "strikes us as not just ambiguous, but nearly incoherent" and misstates California law. In order for a policy provision, even one previously judicially construed, to be fixed as a matter of law, that provision must be unambiguous and must have been construed in an analogous context. Evanston makes neither showing.

### 1. <u>**The Aggregate Limits Provision is Ambiguous**</u>

The analysis starts and stops with the California Court of Appeals' decision in *Garamendi* – the only precedential opinion interpreting the extent of aggregate limits provision. In *Garamendi*, the Court of Appeals found a nearly identical provision ambiguous and construed it to meet the reasonable expectations of the insured.

In *Garamendi*, the policyholder sought to recover environmental cleanup costs for property damage arising from a predecessor's waste hauling operations. *Garamendi*, 131 Cal.App.4th at 33. The policyholder was covered by a second-layer excess liability policy issued by Mission Insurance Company ("Mission") for one year (1985) with limits of "$5,000,000 excess $1,000,000 excess primary." *Id.* at 34-37. Mission went into liquidation and claims filed under Mission policies were handled by the California Insurance Commissioner (the "Commissioner"). *Id.* at 33.

The primary and first-layer excess insurance policies were both issued by Transamerica Insurance Company ("Transamerica"). *Id.* at 34. Critically, the first layer excess policy issued by Transamerica had a specifically enumerated aggregate limit for property damage claims, such as the policyholder's claims to recover

environmental response costs, and thus its coverage was exhausted after paying a total of $1,000,000 in property damage claims. *Id*. The Mission policy provided that it was triggered only when the underlying insurer (Transamerica) "paid or have been held liable to pay" $1,000,000 per occurrence and $1,000,000 "in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and in respect of [Occupational Injury]." *Id.* at 43-44.

The Commissioner, after the claim and surrounding factual circumstances were presented by the policyholder, denied coverage on the ground that the Mission policy only provided aggregate limits for products liability and occupational injury and no aggregate limits for other types of claims, including property damage claims. *Id.* at 44. In response, the policyholder appealed and argued the aggregate limits provision "should not be construed as saying that the underlying aggregate annual amount which, once reached, causes Mission's liability to attach, exists only for products liability and occupational injury; but instead should be interpreted to mean that there is a 'separate' aggregate annual limit for those types of claims." *Id.* In essence, the policyholder argued that the Mission policy had three aggregate limits – one for products liability, one for occupational injury, and one for everything else.

The policyholder's argument for an aggregate limit was premised on a coverage gap that resulted under the circumstances of that case. Specifically, since the first-layer excess policy had an aggregate limit for property damage claims and the Mission policy did not reflect that language, there would be no coverage for future property damage losses once the aggregate limit was exhausted, unless the Mission policy was construed to have a similar aggregate limit and attach upon payment of property damage losses by the first-layer excess insurer. *Id.* at 49. Significantly, there is no such coverage gap here.

In analyzing the aggregate provision, the *Garamendi* Court found the provision was "not just ambiguous, but nearly incoherent." *Id.* at 47. As required by "clear California authority," it thus interpreted the ambiguous provision to "protect the

objectively reasonable expectations of the insured." *Id.* at 48-49. The court focused on the fact that the Mission policy was a follow-form policy and that the underlying first-layer excess policy had an aggregate limit for property damage claims. *Id.* It further found that by interpreting the Mission policy to have a third, catch-all aggregate limit it would "read the language in harmony with the existing Transamerica primary and first excess policies" and avoid creating "unlimited per occurrence gaps in coverage for all types of covered injuries other than product liability and occupational injury." *Id.* at 49. The *Garamendi* Court thus held that, under the circumstances, the Mission policy had a third aggregate limit for general liability claims.[5] *Id.*

At end, the *Garamendi* Court followed California law and construed ambiguous policy language in a manner to bring about the reasonable expectations of the insured under the circumstances of the case. It just so happened that in that case, a finding that there was an aggregate limit for general liability claims increased the coverage available to the policyholder by closing a significant gap in coverage. *Garamendi* was decided based on the facts of that case. It does not announce a general rule that this same language is unambiguous as a matter of law and must be interpreted in all subsequent cases as providing aggregate limits for general liability claims. *See Security Ins. Co. of Hartford v. The Lubrizol Corporation*, No. 1:06-cv-215, 2008 WL 11344758, at *8 (finding *Garamendi* was "guided by the specific nature of the factual issues involved and corresponding pragmatic concerns," that the court explicitly

---

[5] The *Garamendi* Court also indicated skepticism that an insurer would issue a policy with no general aggregate limits. It was incorrect on this point. As demonstrated in the GAO Report and Restatement attached to the FAC, this was standard before 1986. Likewise, the RCBO's contemporaneous policies attached to the FAC do not have an aggregate limit applicable to sexual molestation claims. Furthermore, the Courts in *Weyerhaeuser* and *Hercules* (*infra* p. 16) both interpreted the same language as unambiguously <u>not</u> having an aggregate limit for general liability claims.

determined that the policy was ambiguous, and that the contractual interpretation that it ultimately adopted was to the benefit of the insured, as mandated by the contra-insurer rule).

Rather, *Garamendi* confirms the longstanding California rule that that policy language must be interpreted in the context of the policy as a whole and in the circumstances of the case. In addition to the *Lubrizol* case limiting *Garamendi* to its specific facts, the Washington and Delaware Supreme Courts have held that the same provision unambiguously did not provide an aggregate limit for general liability claims. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 123 (Wash. 2000); *Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481, 495-96 (Del. 2001). There is no reasonable basis for concluding, as Evanston claims, that this provision unambiguously contains a general aggregate limit for the claims asserted against the RCBO. *See Fire Ins. Exch.*, 116 Cal.App.4th at 465 (the existence of conflicting judicial interpretations of a policy provision may support a finding that a policy provision is ambiguous).

2. **The Cases Relied Upon by Evanston are Neither Precedential Nor Analogous**

As set forth above, California law is clear that policy language must be interpreted in the context of the policy as a whole and in the circumstances of the case, even if it has been previously judicially construed.

The facts here differ significantly from *Garamendi*. First, unlike in *Garamendi*, the Aetna Excess Policies underlying the Associated Policy do not have aggregate limits for general liability claims. Second, unlike in *Garamendi*, construing this ambiguous language to contain a third aggregate limit would reduce (not increase) the coverage available to the RCBO and create (not eliminate) unlimited liability for the RCBO once this aggregate limit is exhausted by the hundreds of claims pending against it in the Southern California Clergy Cases. Therefore, following *Garamendi*, the only construction of this provision in this case that is in harmony with the Aetna

Excess Policies (and the RCBO's other contemporaneous policies) and in line with the reasonable coverage expectations of the RCBO is a finding that the Associated Policy does not have an aggregate limit for sexual molestation claims.[6]

Evanston heavily relies upon the unpublished Ninth Circuit opinion in *San Diego Unified Port Dist. v. Landmark Ins. Co*. and the interlocutory unpublished opinion of this Court in *San Bernadino County v. Ins. Co. of Pa*., both of which were decided on summary judgment and neither of which constitute binding precedent or compel a finding that the aggregate limits provision must be construed to have a separate limit for general liability claims.

The Ninth Circuit in *San Diego Unified* relied on multiple provisions that purportedly unambiguously contemplated a general aggregate limit, including an "Ultimate Net Loss Limit of Liability Amended" endorsement notably absent from the Associated Policy. *San Diego Unified*, 809 Fed. App'x at 408. The Ninth Circuit purportedly relied upon *Garamendi* for the proposition that there is a general aggregate limit in the umbrella/excess policy at issue. *Id.* However, it omitted the critical fact that *Garamendi* found the same provision ambiguous and did not decree that it provided a general aggregate limit beyond the circumstances of that case. *Id.* The *San Diego Unified* case does not support dismissal here.

Likewise, the Court in *San Bernadino*, relying in part on *Garamendi*, found that "at the time of contracting … the parties intended for the policies to have an aggregate limit for property damage." *San Bernardino*, 2023 WL 4291835, at *10. But again, the court did not hold that the provision was *always* required to be construed in this

[6] The RCBO believes that it will be entitled to summary judgment in its favor on Count I of its Counterclaim once a full factual record has been presented to the Court, including its full contemporaneous coverage profile and expert testimony and materials discovered from Associated and other insurers indicating that policies issued in this timeframe (1977-1981) did not contain and were not intended to contain aggregate limits for general liability claims.

way. Rather, it found only that the evidence showed the parties intended to include a general aggregate limit. *Id.* Here, it cannot reasonably be discerned at the pleading stage what the parties intended because the case is still in its infancy and no discovery has been exchanged. The *San Bernardino* case does not support dismissal.

Given the distinct factual circumstances between the present case and *Garamendi* (and its non-precedential federal court progeny) as detailed above, Evanston has not and cannot establish an analogous context between *Garamendi* (and its progeny) and the circumstances of this case allowing their ultimate construction of the provision to be applied here without more analysis. Accordingly, dismissal is improper at this stage and the construction of this provision is only proper with a full factual record.

Finally, it is premature to determine whether the factual circumstances of this case are factually analogous to the cases relied upon by Evanston at the motion to dismiss stage. The cases relied upon by Evanston were decided at the summary judgment stage where the court had the benefit of a full record and evidentiary material. *See San Diego Unified*, 809 Fed. App'x at 407; *San Bernardino*, 2023 WL 4291835, at *1; *cf. Garamendi*, 131 Cal.App.4th at 50 (reversing show cause order and remanding case as "[t]he parties should have an opportunity to present their views"). Evanston's Motion to Dismiss is a transparent effort to have the Court decide an issue without any factual record beyond the pleadings – a decision that could deny tens of millions of dollars to resolve sexual molestation claims.

## IV. CONCLUSION

The RCBO's Counterclaim easily meets the only requirement to proceed past the pleadings stage: it asserts a live substantial controversy between the Parties with adverse legal interests that is ripe for adjudication.

While the Court should deny Evanston's motion on procedural grounds alone, Evanston has failed to establish its right to judgment as a matter of law on the Count I of the Counterclaim. The only California state court to consider the language at issue

here found it not only ambiguous, but incoherent. That court's interpretation in favor of coverage does not, as Evanston would have this Court believe, fix it as a matter of law. As such, adjudication on policy interpretation without first obtaining discovery on the parties' reasonable expectations with regard to the negotiation, drafting, and language of the particular provision at issue is improper. It is premature to decide this issue on a motion to dismiss. Evanston's Motion should be denied.

Dated: July 11, 2024

LATHROP GPM LLP

By: /s/ Ronald A. Valenzuela
Ronald Valenzuela
Brent Vincent
Attorneys for Defendant The Roman Catholic Bishop of Orange

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant/Counter-Plaintiff The Roman Catholic Bishop of Orange, certifies that this brief contains 6,044 words, which complies with the word limit of Central District of California Local Rule 11-6.1.

Dated: July 11, 2024

LATHROP GPM LLP

By: /s/ Ronald A. Valenzuela
Ronald Valenzuela
Attorneys for Defendant The Roman Catholic Bishop of Orange