**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

EVANSTON INSURANCE COMPANY,
Plaintiff,
v.
THE ROMAN CATHOLIC BISHOP OF ORANGE,
Defendant.

Case No. 8:23-cv-02446-MRA-ADS

**ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS DEFENDANT/COUNTER-PLAINTIFF'S FIRST COUNTER-CLAIM [ECF 31] AND DENYING DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR LEAVE TO AMEND COUNTERCLAIM [ECF 34]**

Before the Court are Plaintiff/Counter-Defendant's Motion to Dismiss Defendant/Counter-Plaintiff's First Counterclaim (the "Motion to Dismiss") and Defendant/Counter-Plaintiff's Motion for Leave to Amend Counterclaim (the "Motion for Leave to Amend") (collectively, the "Motions"). ECF 31, 34. The Court read and considered the Motions and held a hearing on August 1, 2024. ECF 45. For the reasons stated herein, the Court **GRANTS** the Motion to Dismiss and **DENIES** the Motion for Leave to Amend.

///

///

# I. BACKGROUND[1]

## A. Insurance Policies

On or about July 14, 1977, Plaintiff/Counter-Defendant Evanston Insurance Company's ("Evanston") predecessor-in-interest, Associated International Insurance Company ("Associated"), issued an umbrella/excess liability insurance policy, Policy No. AEL 050384 (the "Associated Policy"), to Defendant/Counter-Plaintiff The Roman Catholic Bishop of Orange ("RCBO"). ECF 19 ¶ 7, at 16-17. The initial 12-month policy period began on June 18, 1977, but was then extended for three additional 12-month periods. ECF 19 ¶¶ 8-9. The policy expired on June 18, 1981. *Id.* ¶ 9. The Associated Policy is a second-level umbrella/excess policy to an underlying first-level umbrella/excess policy, Policy No. 05XS (the "Aetna Policy"), issued by The Aetna Casualty and Surety Company ("Aetna") to RCBO. *Id.* ¶ 10.

Under the Associated Policy, Associated agreed to "indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability (a) imposed upon the Assured by law; (b) assumed under contract or agreement . . . , for damages, direct or consequential and expenses on account of: (i) Personal Injuries, including death at any time resulting therefrom; (ii) Property Damage; (iii) Advertising Liability, caused by or arising out of each occurrence happening anywhere in the World, and arising out of hazards covered by and as defined in [the Aetna Policy] and issued by [Aetna]." ECF 19-1 at 3. The Associated Policy contains a limit of liability provision, which provides:

---

[1] Unless otherwise indicated, the factual background is described as alleged in Defendant/Counter Plaintiff's Answer and Counterclaim and attached exhibits. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Daniels-Hall v. NEA*, 629 F.3d 992, 998 (9th Cir. 2010). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is required to presume that all well-pleaded allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court may consider documents attached to the complaint on a Rule 12(b)(6) motion. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

> 2. LIMIT OF LIABILITY – UNDERLYING LIMITS.
>
> It is expressly agreed that liability shall attach to [Associated] only after [Aetna] have paid or have been held liable to pay the full amount of their respective Ultimate Net Loss Liability as follows: $ [1 million] Ultimate Net Loss in respect of each occurrence, but $ [1 million] in the aggregate for each annual period during the currency of the Policy separately in respect to Products Liability and separately in respect of Personal injury (fatal or non-fatal) by Occupational Disease sustained by an employee of the Assured [(hereinafter, "Occupational Injury")],
>
> and [Associated] shall then be liable to pay only the excess thereof up to a further $ [4 million] Ultimate Net Loss in respect of each occurrence – subject to a limit of $ [4 million] in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and separately in respect of [Occupational Injury].

*Id.*

Section 4 of the Aetna Policy provides, in relevant part, that Aetna's liability is limited to $1 million for "each occurrence" and further limited to $1 million as an aggregate annual limit with respect to all ultimate net loss "because of personal injury or property damage which occurs during each annual period while this policy is in force . . . , and arises out of (1) the products hazard or the completed operations hazard or (2) [occupational injury], such aggregate limit to apply separately to (1) and (2)." ECF 19-2 at 7. The Associated Policy states that it "is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein)" as the Aetna Policy. ECF 1-1 at 4; ECF 1 ¶ 18; ECF 19 ¶ 18, at 8.[2]

---

[2] This language appears in the version of the Associated Policy attached as an exhibit to Evanston's Complaint. ECF 1-1 at 4; ECF 1 ¶ 18. It does not appear in the version of the Associated Policy attached to RCBO's Answer and Counterclaim. *See* ECF 19-1. However, in its Answer, RCBO states that "[t]he terms, conditions, and limits of the Associated Policy speak for themselves and RCBO admits all allegations in paragraph 18

**B. John OC-5 DOE Lawsuit and Southern California Clergy Cases**

On March 3, 2020, John OC-5 DOE filed a lawsuit in state court against RCBO and the Roman Catholic Archdiocese of Los Angeles in Orange County Superior Court ("John OC-5 DOE Lawsuit"), seeking to impose liability for the alleged sexual molestation by Father Eleuterio Victor Ramos ("Ramos") and Father Siegfried Widera ("Widera"). ECF 19 ¶ 20, at 19. The John OC-5 DOE Lawsuit was consolidated with a Judicial Council Coordination Proceeding in Los Angeles County Superior Court, Case No. JCCP5101 ("Southern California Clergy Cases"). *Id.* ¶ 21. The alleged abuse of John OC-5 DOE by Ramos purportedly occurred during the Associated Policy period. *Id.* ¶ 22. The alleged abuse of John OC-5 DOE by Widera purportedly occurred after the Associated Policy expired. ECF 1 ¶ 10; ECF 19 ¶ 10, at 4-5.

The John OC-5 DOE Lawsuit was settled prior to trial in December 2023. ECF 19 ¶ 24, at 20. Evanston took the position that under the Associated Policy, there is a $4 million annual aggregate limit applicable to sexual molestation claims, and that there was only $2,585,750 in annual limits available for the June 18, 1979 – June 18, 1980 policy year to fund the settlement of the John OC-5 DOE Lawsuit. *Id.* ¶ 25. Evanston agreed under a reservation of rights to contribute $2,585,750, less than the $4 million annual per occurrence limit of liability, toward the settlement of the John OC-5 DOE Lawsuit under the June 18, 1979 – June 18, 1980 policy year. *Id.* ¶ 26. RCBO accepted the settlement contribution from Evanston, but expressly reserved all rights to pursue Evanston for the $4 million annual per occurrence limit and any other covered claims under the Associated Policy for each of the policy years. *Id.* ¶ 27.

**C. Procedural History**

On December 22, 2023, Evanston filed the instant action against RCBO, seeking a judgment declaring the respective rights and obligations of the parties under the Associated Policy. *Id.* ¶ 1. Specifically, Evanston asserts the following claims for relief: (1) a judicial

---

that are consistent with and denies all allegations in paragraph 18 that are inconsistent with the same." ECF 19 ¶ 18.

declaration that the $4 million annual aggregate limit of liability under the Associated Policy applies to all past and present sexual molestation claims made against RCBO, including the John OC-5 DOE Lawsuit and Southern California Clergy Cases, and that once it pays its agreed-upon contribution to the settlement of the John OC-5 DOE Lawsuit, that Evanston will have exhausted its indemnity obligation under the Associated Policy for the June 18, 1979 – June 18, 1980 policy period; (2) a judicial declaration that the claims asserted against RCBO in the John OC-5 DOE Lawsuit are not covered under the Associated Policy because they do not arise out of an "occurrence;" and (3) reimbursement of its $2,585,750 contribution to the settlement of the John OC-5 DOE Lawsuit, to the extent that any portion of the settlement contribution is attributable to claims that do not arise out of an "occurrence" and/or claims which relate to sexual molestation by Widera. ECF 1 ¶¶ 29-41.

On March 7, 2024, RCBO filed its Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Complaint. ECF 19. RCBO asserts the following counterclaims against Evanston: (1) a judicial declaration that there is no annual aggregate under the Associated Policy applicable to the subject molestation claims, and that the annual per occurrence limit of liability under the Associated Policy is $4,000,000; (2) breach of contract for Evanston's refusal to tender the $4,000,000 annual per occurrence limit of liability toward the settlement of the John OC-5 DOE Lawsuit; (3) a judicial declaration that the claims asserted in the John OC-5 DOE Lawsuit constitute an "occurrence" under the Associated Policy; and (4) a judicial declaration that there are no applicable exclusions that would remove the John OC-5 DOE Lawsuit from coverage under the Associated Policy. *Id.* ¶¶ 28-50, at 20-24.

On April 19, 2024, the Court issued its Civil Trial Order, setting pretrial dates and deadlines in this matter. ECF 27. The hearing deadline for motions to amend pleadings was July 24, 2024. *Id.* at 23. On April 23, 2024, Evanston filed its Motion to Dismiss. ECF 31. On July 10, 2024, RCBO filed its Motion for Leave to Amend and noticed it for

hearing on August 8, 2024. ECF 34. The Court heard oral argument on the Motions on August 1, 2024. ECF 45.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court "must accept as true all of the allegations contained in a complaint," but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although a court generally may not consider evidence outside the pleadings on a Rule 12(b)(6) motion, it may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

## III. DISCUSSION

### A. Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The case or controversy requirement under the

Declaratory Judgment Act is "identical to Article III's constitutional case or controversy requirement." *American States Ins. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). "This provision confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants[.]" *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1280 (9th Cir. 2021) (citation omitted) (cleaned up). Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (citation omitted).

It is undisputed that RCBO's Counterclaim—and more broadly, this case—involves a "substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Interpretation of the aggregate limit provision determines RCBO's potential coverage for and Evanston's potential exposure to liability over the sexual molestation claims in the John OC-5 DOE Lawsuit and Southern California Clergy Cases. The Court therefore exercises its discretion to issue declaratory judgment as to the interpretation of the aggregate limit provision.

In response to Evanston's Motion to Dismiss, RCBO argues as a threshold matter that, because it has alleged an actual controversy between the parties, its Counterclaim cannot be dismissed for failure to state a claim. ECF 35 at 5, 16. This argument conflates the "case and controversy" justiciability inquiry under the Declaratory Judgment Act with an independent requirement under the Federal Rules of Civil Procedure that a pleading state a legally cognizable claim upon which relief can be granted. That RCBO's Counterclaim for declaratory judgment as to the interpretation of the aggregate limit is appropriate for judicial review does not mean that the claim is supported by a "cognizable legal theory" to survive a motion to dismiss. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted)). A claim for declaratory

judgment is "ultimately a request for relief, and [RCBO] is not entitled to such relief absent a viable underlying claim." *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 873, 888 (N.D. Cal. 2011).

Evanston and RCBO seek countervailing declaratory judgments that the Associated Policy does or does not include an annual aggregate limit for general liability claims, including the sexual molestation claims in the John OC-5 DOE Lawsuit and the Southern California Clergy Cases. *Compare* ECF 1 ¶¶ 26-31 *and* ECF 19 ¶¶ 28-33. In its Motion to Dismiss, Evanston argues that the Associated Policy is unambiguous and must be interpreted as a matter of law to contain a general aggregate limit. ECF 31-1 at 13. In its Opposition, RCBO responds that the aggregate limit provision is ambiguous, and the parties should be permitted to take discovery on the matter to determine the parties' reasonable expectations regarding the Associated Policy. ECF 35 at 6-8, 17-22.

The Court agrees with RCBO that the parties' claims for declaratory judgment as to the interpretation of the aggregate limit provision are "mirror image[s]" of one another. ECF 35 at 5. And in moving to dismiss RCBO's mirror Counterclaim without leave to amend, Evanston effectively seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). But the distinction between a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings does not impact the Court's analysis. "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "Rule 12(b)(6) motions are typically brought before the defendant files an answer, while a motion for judgment on the pleadings can only be brought after the pleadings are closed." *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1155 (E.D. Cal. 2006). "Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its 12(c) analog." *Dworkin*, 867 F.2d at 1192.

//

//

//

**B. Interpretation of the Annual Aggregate Limit Provision**

***1. Rules of Insurance Policy Interpretation***

The parties agree that California's rules of interpretation apply. *See* ECF 31-1 at 13-14; ECF 35 at 14-15. Under California law, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992). "[T]he mutual intention of the parties at the time the contract is formed governs interpretation." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 867 (1993) (citing Cal. Civ. Code § 1636).

"Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* (citing Cal. Civ. Code § 1639). "If the policy language 'is clear and explicit, it governs.'" *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (quoting *Bank of the W.*, 2 Cal. 4th at 1264); *see also* Cal. Civ. Code § 1638. When interpreting a policy provision, courts "must give its terms their 'ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer*, 21 Cal. 4th at 1115 (citation omitted); *see also* Cal. Civ. Code § 1644. "The terms must also be interpreted 'in context' and give effect 'to every part of the policy with 'each clause helping to interpret the other.'" *Palmer*, 21 Cal. 4th at 1115 (internal citation omitted) (quoting *Bank of the W.*, 2 Cal. 4th at 1265; Cal. Civ. Code § 1641).

"A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole." *Id.* Courts will not adopt "a strained or absurd interpretation in order to create an ambiguity where none exists." *Bay Cities Paving*, 5 Cal. 4th at 867 (quoting *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 809 (1982)).

"Where a policy term has been judicially construed, it is not ambiguous." *McMillin Homes Constr. Inc. v. Nat'l Fire & Marine Ins. Co.*, 35 Cal. App. 5th 1042, 1052 (2019) (citing *Cnty. of San Diego v. Ace Prop. & Cas. Ins. Co.*, 37 Cal. 4th 406, 423 (2005)).

"[T]he judicial construction of the term should be read into the policy unless the parties express a contrary intent." *Bartlome v. State Farm Fire & Cas. Co.*, 2018 Cal. App. 3d 1235, 1239 (1989). This rule of insurance policy interpretation, however, is to be applied "with caution, first determining whether the context in which the construed term appears is analogous to the context of the term before [it]." *Lockheed Corp. v. Continental Ins. Co.*, 134 Cal. App. 4th 187, 197 (2005)).

When "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state's intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 851 F.3d 976, 982 (9th Cir. 2017) (quoting *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007)). However, "[t]he existence of conflicting judicial interpretations of a policy provision may support a finding that a policy provision is ambiguous." *Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887, 891 (E.D. Cal. 2010) (citing *Fire Ins. Exchange v. Sup. Ct.*, 116 Cal.App.4th 446, 465 (2004)).

***2. Application of Rules to Associated Policy***

The Court begins with the written limit of liability provision in the Associated Policy, which caps Evanston's liability to "only the excess thereof up to a further $ [4 million] Ultimate Net Loss in respect of each occurrence—*subject to a limit of $ [4 million] in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and separately in respect of [Occupational Injury]*." ECF 19-1 at 3 (emphasis added).

Evanston contends that the aggregate limit provision has been judicially construed in analogous contexts to unambiguously contain an aggregate limit for general liability claims, including the sexual molestation claims at issue in the John OC-5 DOE Lawsuit and the Southern California Clergy Cases. ECF 31-1 at 13-18. It cites three cases in which aggregate limit provisions in standard form policies, similar to the one at issue here, have been interpreted to unambiguously contain a general aggregate limit: (1) *Garamendi v.*

*Mission Ins. Co.*, 131 Cal. App. 4th 30 (2005), (2) *San Diego Unified Port District v. Landmark Insurance Company*, 809 F. App'x 407 (9th Cir. 2020), and (3) *San Bernardino County v. Insurance Company of Pennsylvania*, No. CV 21-01978-PSG-JEM, 2023 WL 4291835 (C.D. Cal. May 16, 2023). ECF 31-1 at 15.

In *Garamendi*, the California Court of Appeals considered two possible interpretations of a substantially similar aggregate limit provision—either (a) the provision creates separate aggregate limits for products liability and occupational injury plus *unlimited* coverage for any other type of claim, or (b) the provision creates separate aggregate limits for products liability, occupational injury, and all other types of claims that fall under the policy's coverage. 131 Cal. App. 4th at 47. The court held that the provision is susceptible to only one reasonable interpretation: that "the word 'separately' preceding the phrase 'in respect of Products Liability and [Occupational Injury]' . . . does not mean 'only' and that the failure to specifically mention property damage in that phrase does not, by negative implication, mean there is no annual aggregate floor for property damage, but instead means there is no 'separate' aggregate." *Id.* at 49. The contrary interpretation, the Court reasoned, would be unreasonable because it would require the insurance company to operate without any "notion [of] what its upper liability limit will be." *Id.* ("[I]t is even harder to imagine that [the insurer] would design a policy under which it could be liable for up to $5 million per claim or occurrence for an unlimited number of occurrences.").

The Ninth Circuit in *Landmark* and the district court in *San Bernardino County* cite *Garamendi* favorably to reach the same conclusion. In *Landmark*, the Ninth Circuit reversed a district court's ruling that an umbrella/excess policy containing an aggregate limit provision nearly identical to the one here was ambiguous. 809 F. App'x at 408. There, as in *Garamendi*, the insured attempted to "sidestep the clear and unambiguous language in those provisions" by pointing to the same "separately" clause. *Id.* Considering this language, the court concluded that "the only reasonable interpretation of [this provision] is that general covered losses . . . are subject to a per-policy cap . . . , depending

on the respective policy, and that *separate* aggregate limits in those same amounts apply to products liability and [occupational injury]." *Id.* Following *Garamendi* and *Landmark*, the district court in *San Bernardino County* interpreted a nearly identical aggregate limit provision to "unambiguously include a general aggregate limit, which includes a limit on property damage, and separate aggregate limits [for products liability and occupational injury]." 2023 WL 4291835, at *10. There, as in *Garamendi*, the Court reasoned that the policy language "cannot reasonably be interpreted under the circumstances to subject [the insurer] to the potential of unlimited liability for property damage." *Id.* RCBO does not cite—and the Court has not identified—any conflicting judicial interpretations of the aggregate limit provision. *See Lakeland*, 727 F. Supp. 2d at 891.

Because the language at issue has been judicially construed in the context of other form policies, the Court finds that as a rule of insurance policy interpretation, the aggregate limit provision at issue here is unambiguous as a matter of law. *See, e.g.*, *Cnty. of San Diego*, 37 Cal. 4th at 423; *Bartlome*, 208 Cal. App. 2d at 1239; *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1161 (S.D. Cal. 2022). In the absence of any convincing evidence that the California Supreme Court would reach a different conclusion, the Court follows the state appellate court's decision in *Garamendi* to hold that there is only one reasonable interpretation of the limit of liability provision: that the policy contains a $4 million aggregate limit for general liability claims, and separate aggregate limits for products liability and occupational injury. *See Teleflex*, 851 F.3d at 982.

RCBO's contrary interpretation—rejected in *Garamendi*, *Landmark*, and *San Bernardino County*—would mean that Associated contracted to cap its liability at $4 million per occurrence, but inexplicably set *no* ceiling on its annual aggregate liability for a series of occurrences giving rise to general liability. This reading of the aggregate limit provision is unreasonable and contrary to the plain language of the Associated Policy. As the court in *Garamendi* explained, "[t]he provision that underlies the current dispute is contained under the heading 'Limit of Liability—Underlying Limits' and appears to be an attempt to clarify both the amount of damages or loss that must be incurred before [the

insurer's] coverage attaches and the upper dollar limit on [the insurer's] liability." 131 Cal. App. 4th at 43. To adopt RCBO's interpretation would mean that the provision at issue, "instead of limiting liability as the heading suggests is its intent, works to *expand* [the insurer]'s potential liability." *Id.* at 47 (cleaned up). This outcome is "wholly irrational." *Id.*

RCBO raises several counter arguments, none of which the Court finds persuasive. *First*, RCBO contends that *Garamendi* found that the aggregate limit provision was "not just ambiguous, but nearly incoherent." ECF 34 at 17-20. This argument selectively plucks from *Garamendi*. The statement was directed at the provision limiting coverage on an annual basis in the context of a single-year policy, *not* the "separately in respect of" language at issue here. 131 Cal. App. 4th at 47 ("While there might be some point to having a provision limiting coverage on an annual basis in a multi-year policy . . . , the . . . policy before us was for one year[.]"). In case there was any doubt, the court confirmed in the same paragraph "[w]ithout looking any deeper" that interpreting the excess limits clause to contain a general aggregate limit "seems more reasonable—or at least less wholly irrational" than the alternative interpretation. *Id.*

*Second*, RCBO argues that the facts in this case "differ significantly" from *Garamendi* because unlike in *Garamendi*, the umbrella policy does not have any aggregate limit for general liability claims, and the Associated Policy "follows form to" the Aetna Policy. ECF 35 at 9, 20; *see also* ECF 19 ¶ 10. This ignores the written terms of the Associated Policy, which clearly state that its limits of liability provision *does not* follow from the Aetna Policy. *See* ECF 1-1 at 4; ECF 19 ¶ 8. This argument also turns *Garamendi* on its head. There, the court was particularly concerned with "huge coverage gaps" that could emerge if excess coverage "did not begin where the underlying coverage left off." *Id.* If the Court were to adopt RCBO's position that the Aetna Policy *does not* contain an aggregate limit to liability for general liability claims, then no coverage gaps would exist, as RCBO concedes in its Opposition. ECF 35 at 18. Put differently, recovery for general liability claims would *never* exhaust under the first umbrella/excess policy, and there would

be no demarcation of where the Aetna Policy ends, and the Associated Policy begins. And there would have been no need for RCBO to purchase another layer of coverage for general liability claims if it believed it was covered in perpetuity under the Aetna Policy. *See Garamendi*, 131 Cal. App. 4th at 46.

*Third*, RCBO asserts that *Landmark* and *San Bernardino* were adjudicated at summary judgment, after a full factual record had been developed, and neither case constitutes binding precedent. ECF 35 at 21. Yet in both cases, the courts looked no further than the policy language and its prior judicial construction to determine that the limit of liability provisions contained an aggregate limit for general liability claims. *See Landmark*, 809 Fed App'x at 408 (finding that "[m]ultiple provisions in the umbrella/excess policies clearly and unambiguously contemplate a general aggregate limit for covered losses"); *San Bernardino*, 2023 WL 4291835, at *10 (declining to consider extrinsic evidence of the insurer's "course of performance and prior litigation positions" where policies were found to be unambiguous). Moreover, while it is true that neither decision is precedential, the Court finds the cases persuasive. *See Changing World Films LLC v. Parker*, No. 22-cv-9021-DMG-PVC, 2023 WL 8044348, at *6, n.7 (C.D. Cal. Sept. 12, 2023) (explaining that unpublished cases may be "relied upon for their persuasive value and to indicate how the Ninth Circuit applies binding authority"); *City of Fresno v. United States*, 709 F. Supp. 2d 888, 909 (E.D. Cal. 2010) ("District court opinions are relevant for their persuasive authority[,] but they do not bind other district courts within the same district."); *see also* 9th Cir. R. 36-3(a) (permitting citation of unpublished Ninth Circuit decisions after 2007).

*Fourth*, RCBO argues that *Garamendi* was decided in favor of the reasonable expectations of the insured, whereas adopting the same interpretation here would work against the insured's reasonable expectations in this case. ECF 35 at 22. This argument ignores the ordering of rules of interpretation. Only "[a]mbiguous coverage clauses are to be interpreted to protect the objectively reasonable expectations of the insured." *Garamendi*, 131 Cal. App. 4th at 42. "Where the policy language is clear and unambiguous, the insured reasonably can expect only the coverage afforded by the plain

language of the contract." *Merrill Seeley, Inc. v. Admiral Ins. Co.*, 225 Cal. App. 3d 624, 630 (1990). As explained above, the Court finds that the provision here is unambiguous, and the inquiry ends there.

*Lastly*, though not raised in its briefing, RCBO maintained at oral argument that *Garamendi*, *Landmark*, and *San Bernardino County* are not analogous to the case at bar because they involve property damage claims arising from environmental cleanup, whereas this case involves personal injury claims stemming from sexual molestation allegations. This argument overstates the analogousness requirement articulated in *Lockheed*. There, the court deemed it "important" that the insurance policies at issue were "manuscript policies" drafted especially for the insured, *not* "standard form policies such as those commonly used, at least as a starting point, for most liability policies today." 134 Cal. App. 4th at 197. In light of that distinction, it concluded that "[p]rior judicial construction of a term in a standard form policy will be helpful only so long as the term appears in a context analogous to its context in the policy before us." *Id.* at 197-98. This distinction is not relevant here. There is no dispute that the Associated Policy is a form policy, and its aggregate limit provision is substantially similar to the aggregate limit terms appearing in form policies in the cited cases.

The aggregate limit provision is subject to only one reasonable interpretation: "separate" does not mean "only." The Court finds that the Associated Policy includes a $4 million annual aggregate limit for general liability claims and separate annual aggregate limits for products liability and occupational injury. Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** RCBO's first counterclaim.

### C. Leave to Amend

A motion for leave to amend is subject to Federal Rule of Civil Procedure 15(a)(2), which requires the court to "freely give leave when justice so requires." However, where the deadline to amend the pleadings has passed, Plaintiff must first demonstrate good cause for amending the Court's scheduling order under Rule 16(b)(4). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992). Rule 16(b)'s good cause standard

"primarily considers the diligence of the party seeking the amendment." *Id.* at 609. If the moving party "was not diligent, the inquiry should end." *Id.* On the other hand, if the moving party demonstrates diligence under Rule 16(b), the court then applies the standard under Rule 15(a) to determine whether the amendment is proper. *See id.* at 608.

RCBO's Motion for Leave to Amend, noticed for a hearing date approximately two weeks past the Court's hearing deadline, was untimely.[3] ECF 34. The Court is not satisfied that RCBO has demonstrated diligence in pursuing its motion.[4] The Court does not question that RCBO's counsel was diligently attending to other aspects of the litigation. *See* ECF 42-1(Vincent Decl.) ¶¶ 1-21. However, counsel does not explain why RCBO delayed filing its motion until early July 2024. The proposed amended pleading is largely responsive to arguments raised in Evanston's Motion to Dismiss, which was filed in April 2024. Yet RCBO's counsel first made Evanston's counsel aware of its contemplated motion only months later in a June 27, 2024, email indicating that RCBO would "like to bring the motion next week," *i.e.*, the week of July 1, 2024. *Id.* ¶ 22, Ex. B. RCBO was made aware of Evanston's opposition to the motion on July 1, 2024. *Id.* ¶ 24, Ex. D. Even if RCBO had filed its Motion that day, it could not have been heard by the Court's deadline. And yet RCBO inexplicably delayed an additional nine days to file its motion.

---

[3] RCBO is mistaken in believing that "there were no civil hearing dates available for the remainder of 2024" at the time of filing. The Court's procedures web page (https://www.cacd.uscourts.gov/honorable-mónica-ramírez-almadani) reflects the "closed" motion dates, not the available motions dates. The procedures page was subsequently updated to direct "[c]ounsel to check the 'Closed Motion Dates' portion of the motion calendar. This contains ONLY those dates that are closed or partially closed, not all Mondays and Thursdays." (emphasis omitted). In other words, dates that do not appear under "Closed Motion Dates" remain open. RCBO should have timely contacted the Court's Courtroom Deputy to receive an available hearing date prior to filing.

[4] Evanston contends that RCBO failed to comply with the meet-and-confer requirement under Local Rule 7-3. *See* ECF 37 at 5-7. Having considered counsels' declarations and their email correspondence, Court is satisfied that RCBO met its meet-and-confer obligations. *See* ECF 42-1 ¶¶ 22-26.

While the Court is not persuaded that RCBO has demonstrated sufficient good cause to modify the pre-trial schedule, it also recognizes that the delay at issue was a matter of two weeks. As a result, the Court has considered the Motion for Leave to Amend and finds it unavailing. While Rule 15(a) provides that leave to amend shall be freely given, leave is "not to be granted automatically." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). Where "the pleading could not possibly be cured by the allegation of other facts," the district court acts within its discretion in denying leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). "Futility alone can justify a court's refusal to grant leave to amend." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).

Evanston contends that because RCBO's Motion for Leave to Amend is directed only at its first counterclaim and that claim fails as a matter of law, further amendment would be futile. ECF 37 at 10-11. In general, RCBO proposes the following amendments to its first counterclaim: (1) "[a]dds allegations detailing RCBO's other contemporaneous insurance coverage;" (2) "[a]dds factual allegations establishing that the only precedential California decision held that the aggregate provision at issue was 'not just ambiguous, but nearly incoherent;'" (3) "[a]dds factual allegations demonstrating that the General Accounting Office found that policies at the time the Associated Policy was issued did not contain aggregate limits for general liability claims including molestation claims;" and (4) "[a]dds other clarifying factual details associated with each of the above changes." ECF 34-1 at 6. RCBO's new allegations would not alter the Court's conclusion that its first counterclaim is premised on a non-cognizable legal theory—that the Associated Policy is ambiguous and does not include an annual aggregate limit for general liability claims.

*First*, while it is true that "[o]ne of the circumstances that may properly be considered is the existence and coverage limits of other insurance held by the insured," *Garamendi*, 131 Cal. App. 4th at 42, RCBO does not explain how the other insurance held

by RCBO would create an ambiguity in the Associated Policy. The Associated Policy references only the Aetna Policy, and both policies are already attached to RCBO's Counterclaim for the Court's consideration. *See* ECF 19-1, 19-2. Moreover, as Evanston notes, the other insurance policies referenced in the proposed first amended counterclaim were issued "before, after, and above" the Associated Policy. ECF 37 at 10. They are not helpful in creating a snapshot of RCBO's excess insurance coverage at the time of the Associated Policy. ECF 37 at 10.

*Second*, RCBO's allegations regarding its interpretation of *Garamendi* constitutes legal argument, not fact pleading. This is not appropriate under federal pleading rules. *See Kirkpatrick v. Cnty. of Washoe*, 792 F.3d 1184, 1191-92 (9th Cir. 2015) ("Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."); *see also Osby v. Park Pictures, LLC*, No. LA CV16-06071-JAK-E, 2017 WL 374902, at *5 (C.D. Cal. Jan. 25, 2017) ("Legal argument, case citations and refutation of arguments that are anticipated are not necessary or appropriate in a pleading." (citation and internal quotations omitted)). Inclusion of legal arguments is therefore not a proper basis for granting leave to amend. *See Adams v. Lanum*, No. 3:24-CV-5034-KKE-DWC, 2024 WL 1075417, at *4 (W.D. Wash. Mar. 12, 2024) ("[I]n any amended pleadings, Plaintiff shall refrain from making legal arguments or citing caselaw and, instead, focus on the factual circumstances giving rise to his claims.").

*Third*, RCBO's references to the Government Accountability Office ("GAO") report are unavailing. In *Ray v. Valley Forge Insurance Company*, relied upon by RCBO, the California Court of Appeals explained that "[c]ourts may consider 'interpretive literature' in construing standardized insurance policy provisions. But if the language of the policy is clear and unambiguous, [the court] does not consider extrinsic evidence." 77 Cal. App. 4th 1039, 1044 (1999). Here, having found that the aggregate limit provision is unambiguous, the Court concludes that the GAO report would be irrelevant to interpreting the policy. *See id.* at 1049.

Accordingly, because RCBO's proposed first amended counterclaim would be subject to dismissal for the same reasons as its current Counterclaim, the Court finds that further amendment would be futile. *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). RCBO's Motion for Leave to Amend is **DENIED**.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss (ECF 31) is **GRANTED** and the Motion for Leave to Amend (ECF 34) is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 17, 2024

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE